IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| REBEKAH LEITNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-3075-SRB |
| | ) | |
| RICHARD MORSOVILLO, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Richard Morsovillo ("Morsovillo"), Jeffrey Sneed ("Sneed"), JumpSix Marketing, LLC ("JumpSix"), and BigPxl, LLC's ("BigPxl") (collectively, "Moving Defendants")[1] Motion to Dismiss and to Strike Portions of Plaintiff's First Amended Complaint. (Doc. #17.) For the reasons below, the motion is granted in part and denied in part.

### I. BACKGROUND

This civil lawsuit arises from a complex web of business relationships between Plaintiff Rebekah Leitner ("Plaintiff") and Defendants. Briefly, the Court sets forth the relevant facts as taken from Plaintiff's amended complaint.

Plaintiff, an Ohio citizen, started her own marketing business in 2012, focusing initially on print marketing but later expanding into digital marketing and advertising, as well as website hosting and management. Over time, Plaintiff developed her own client list and entered various contracts with her clientele. During 2014, Plaintiff partnered with a company known as Mission Marketplace LLC, through which she became connected to Defendants Morsovillo and Sneed, who are both citizens of Missouri. Between 2016–2017, Plaintiff hired David Roark ("Roark")

---

[1] As used throughout this Order, "Defendants" refers to all defendants named in Plaintiff's amended complaint, whereas "Moving Defendants" refers specifically to the defendants which join in the instant motion.

and Jennifer Griffin ("Griffin"), who are both citizens of Indiana, as independent contractor sales representatives for her business. Plaintiff, due to "false and misleading representations" made by Morsovillo and Sneed, later began utilizing JumpSix,[2] an LLC formed by Morsovillo in 2018, to perform various marketing services for her clientele. (Doc. #13, ¶ 49.) Plaintiff's relationship with Morsovillo, Sneed, and JumpSix deteriorated over time, and ultimately ended following an alleged "pattern and practice of deceptive business practices" by Morsovillo and his associates. (Doc. #13, ¶ 104.)

In short, Plaintiff alleges Morsovillo and Sneed falsely induced Plaintiff into a business relationship with JumpSix and tortiously interfered with her client portfolio, business model, and her contractual relationships with Roark and Griffin. Among other things, Plaintiff alleges that Morsovillo, Sneed, and/or JumpSix and BigPxl directed Roark and Griffin to access and tamper with Plaintiff's client records and data, with the intent to use that client information to lure away her customers and redirect business to JumpSix and/or BigPxl. She also alleges Defendants, in furtherance of their efforts to capture Plaintiff's clientele, used her records and data to contact Plaintiff's clients and threatened to terminate their marketing services unless the clients entered new contracts with JumpSix and BigPxl. Plaintiff states Defendants' actions interfered with and severely disrupted her business, "defamed her to her own clients" and prospective clientele, and ultimately "st[ole] her clients," causing her significant monetary losses. (Doc. #13, ¶ 94.)

Plaintiff initiated suit pursuant to diversity jurisdiction and federal question jurisdiction, alleging Defendants' actions violate both state and federal law. Her amended complaint asserts

---

[2] Plaintiff alleges JumpSix and BigPxl are both Missouri limited liability companies, of which Morsovillo and Sneed are the sole owners and members. (Doc. #13, ¶¶ 6–7, 13–14.) Because Morsovillo and Sneed are both Missouri citizens, JumpSix and BigPxl are thus considered citizens of Missouri for purposes of diversity jurisdiction. *See OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) ("An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members."). Plaintiff further alleges BigPxl is the "mere continuation or alter ego of JumpSix." (Doc. #13, ¶ 102.)

the following claims against Defendants: (1) Count I: Tortious Interference with Contracts and/or Business Expectations; (2) Count II: Defamation; (3) Count III: Violation of the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; (4) Count IV: Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; (5) Count V: Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; (6) Count VI: Violation of the Missouri Computer Tampering Act ("Missouri CTA"), MO. REV. STAT. § 569.095 *et seq.*; (7) Count VII: Conversion; (8) Count VIII: Civil Conspiracy; and (9) Count IX: Action for Accounting. Moving Defendants seek dismissal of portions of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and move to strike portions of her amended complaint pursuant to Rule 12(f).

## II. LEGAL STANDARD

### A. Rule 12(b)(6): Failure to State a Claim

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When considering a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotation marks omitted).

**B. Rule 12(f): Motion to Strike**

Under Rule 12(f), a district court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, "[s]triking a party's pleading . . . is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Consequently, motions to strike are rarely granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

**III. DISCUSSION**

Moving Defendants seek dismissal of Plaintiff's federal claims (Counts III, IV, and V) pursuant to Rule 12(b)(6). Plaintiff opposes the motion, stating she has done enough at this early stage to survive dismissal. Each argument is addressed in turn below.

**A. Count III: Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701**

Commonly known as the Stored Communications Act, the SCA authorizes a civil cause of action against anyone who:

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage.

*Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 838 (8th Cir. 2015) (quoting 18 U.S.C. § 2701(a)); 18 U.S.C. § 2707 (creating a civil cause of action). As defined by the SCA, "electronic storage" means: "(1) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof[;] or (2) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* at 839 n.4 (quotation marks omitted) (citing 18 U.S.C. § 2510(17) and

noting a split in authority regarding whether these definitional provisions should be read in the disjunctive or together).

Moving Defendants argue Plaintiff's amended complaint fails to plead any facts showing that the alleged access to her protected communications was unauthorized. Moving Defendants argue that only unauthorized access is prohibited by the SCA, and contend the misappropriation or even disclosure of protected information is not unlawful so long as the access was authorized. Plaintiff contends that her factual allegations are more than sufficient to survive a Rule 12(b)(6) dismissal.

Upon review, the Court finds Plaintiff adequately states a claim for relief under the SCA. Specifically, Plaintiff alleges that during a phone call on November 13, 2019, she told Sneed that she wanted Roark and Griffin, who were by then her former sales representatives, to no longer have access to her client data. During that call, Plaintiff asked for "Roark's and Griffin's access to [her] clients, including [her] electronic files and data and her clients' files and data, to be cut off and eliminated" and stated that "Roark and Griffin [are] to have no access to her prospects and clients or their data and files moving forward." (Doc. #13, ¶ 61.) Despite her directives, Plaintiff alleges that Moving Defendants still utilized Roark and Griffin's former email accounts to access and tamper with her "electronic files and data," the files and data of her clients, and her data linked via email on several client and data-management platforms (e.g., HubSpot, Google Drive, and Basecamp). (Doc. #13, ¶¶ 142–45). Taken together, these allegations are more than just mere legal conclusions or formulaic recitations of the elements of a SCA claim. Viewed in a light most favorable to Plaintiff, her alleged facts and the reasonable inferences drawn from them plausibly allege that Moving Defendants lacked the requisite authorization to access Plaintiff's protected information or they intentionally exceeded their authorized use.

Moving Defendants argue any alleged access of Plaintiff's protected information via the client and data-management platforms was authorized because the platforms "were all within the custody and control of JumpSix." (Doc. #18, p. 10.) However, this argument raises various fact-intensive inquiries which are better suited for resolution at a later stage of this litigation, after the parties have the benefit of discovery. The Court finds Plaintiff's amended complaint does not reveal "some insuperable bar to relief," *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004), and Defendants' motion to dismiss Count III is thus denied. Should it be warranted, Moving Defendants may reassert their arguments during a later stage of this case.

### B. Count IV: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

Similar to the SCA, the CFAA authorizes a civil cause of action against anyone who violates select provisions of 18 U.S.C. § 1030.[3] *See Van Buren v. United States*, 141 S.Ct. 1648, 1652 (2021) (citing 18 U.S.C. § 1030(g), which authorizes a civil cause of action). Plaintiff, in her response, clarifies that Count VI arises under subsections (a)(2)(C), (a)(4), and (a)(5)(C) of 18 U.S.C. § 1030. Under those select subsections, a claimant may seek relief against whoever:

> intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer;
> …
> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…[or]
> …
> intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

*See* 18 U.S.C. § 1030(a)(2)(C), (a)(4), and (a)(5)(C); *accord Bayer U.S., LLC v. Hai Zeng*, No. 20-CV-00431, 2020 WL 4429542, at *3 (E.D. Mo. July 31, 2020) (detailing CFAA provisions).

---

[3] While some appellate circuits have found that the CFAA authorizes a civil action for a violation of any of the subsections of § 1030(a), the Court notes the Eighth Circuit itself has not decided the issue and some district courts have limited recovery to certain subsections. *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1045 (D. Minn. 2010) (collecting cases) (limiting CFAA claims to certain subsections of § 1030(a)).

Moving Defendants repeat their earlier arguments asserted against Count III and contend the CFAA, like the SCA, requires any alleged access of protected information to be unauthorized in order to be actionable. For the same reasons previously discussed, this argument fails here as well. Plaintiff alleges more than the mere misappropriation of her protected client data. She puts forth facts plausibly alleging that Moving Defendants accessed data which was off-limits to them without her authorization or consent, which ultimately caused her significant reputational and monetary harm. The question of the scope of authorization, including the issue of which party controlled the various computer systems or platforms at issue in this case, remains a fact-intensive inquiry ill-suited for resolution on a Rule 12(b)(6) motion. *See, e.g.*, *Porters Bldg. Centers, Inc. v. Sprint Lumber*, No. 16-cv-06055, 2017 WL 4413288, at *2–3 (W.D. Mo. Oct. 2, 2017) (considering the issue at summary judgment); *InfoDeli, LLC v. W. Robidoux, Inc.*, No. 15-CV-00364, 2016 WL 6921623, at *6 (W.D. Mo. Mar. 7, 2016) (declining to decide at the motion to dismiss stage which proffered definition of "authorization" imposes liability under the CFAA).

In their reply, Moving Defendants argue the U.S. Supreme Court's recent decision in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), defeats Plaintiff's Count IV claim. The Court disagrees. In *Van Buren*, the Supreme Court held: "In sum, an individual 'exceeds authorized access' [under the CFAA] when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." 141 S. Ct. at 1662. This holding inherently recognizes that any questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries. While Plaintiff includes allegations regarding the suspected motivations or intentions that may

have prompted Moving Defendants to access her client information, she also alleges that the information they accessed exceeded what she had previously authorized. *Van Buren*, in turn, does not legally bar her claim. The Court thus denies Moving Defendants' motion to dismiss Count IV.

### C. Count V: Electronic Communications Privacy Act, 18 U.S.C. § 2510

Plaintiff's last federal claim arises under the ECPA, which authorizes a federal civil suit "when a person intentionally intercepts a wire or electronic communication or internationally discloses the contents of the interception." *Deal v. Spears*, 980 F.2d 1153, 1156 (8th Cir. 1992) (citing 18 U.S.C. § 2511 (detailing unlawful conduct) and § 2520 (authorizing a civil cause of action)). Per the statute, "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir. 1996) (quoting 18 U.S.C. § 2510(4)). Liability under the ECPA may also attach when a person "endeavors to intercept" or "procures any other person to intercept or endeavor to intercept" any protected communication. 18 U.S.C. § 2511(1)(a).

Moving Defendants argue Plaintiff's claim fails because the ECPA requires the alleged interception to occur contemporaneously with the transmission of the protected communication. While acknowledging the Eighth Circuit has not yet decided the issue, Moving Defendants argue other appellate circuits uniformly impose this contemporaneity requirement. Plaintiff contends that Moving Defendant's proffered definition of "interception" is too narrow and "defang[s] the ECPA" by limiting its application to a window of time that lasts only a few seconds or even milliseconds. (Doc. #21, p. 14.)

8

Under the applicable standards in the context of a motion to dismiss, the Court declines to dismiss Plaintiff's ECPA action at this stage. The Court acknowledges the arguments advanced by Moving Defendants regarding the decisions of other courts requiring plaintiff to establish that an unlawful interception occurred contemporaneously with the communication's transmission. The Eighth Circuit, however, has not yet imposed such a requirement. Furthermore, courts that have considered the issue generally do so in the context of a motion for summary judgment. *See, e.g.*, *Porters Bldg. Ctrs.*, 2017 WL 4413288, at *8. Should it be warranted, Moving Defendants may reassert their arguments during a later stage of this case.

### D. Motion to Strike

Pursuant to Rule 12(f), Moving Defendants also ask the Court to strike from Plaintiff's amended complaint Paragraphs 101, 104–117, and 168, as well as Exhibits A and B. Moving Defendants claim the allegations in the cited paragraphs and exhibits are "all impertinent and immaterial to the claims at issue in this case" and assert that any allegations of a "pattern or practice of supposed deceptive business practices" have no bearing on the claims in this suit. (Doc. #18, p. 18.) Plaintiff responds that the cited paragraphs and exhibits are relevant because they reference deceptive business practices by Morsovillo during the period of time operative to this suit and support her claim that Moving Defendants intended to deceive and defraud her.

Upon review, the Court declines to strike Paragraphs 101 or 104–117. Regarding these specific paragraphs, the allegations appear relevant in light of Plaintiff's assertion that Moving Defendants acted with the intention of defrauding her by stealing her clients and undermining her business relationships. *See Gilbee v. RJW Transp., Inc.*, No. 10-CV-0060, 2010 WL 4974863, at *2 (E.D. Mo. Nov. 24, 2010) (citation omitted) (noting that "[m]atter in a complaint will not be stricken unless it clearly can have no possible bearing on the subject matter of the litigation.").

Given Plaintiff's request for punitive damages on her federal claims and Missouri-based tort actions, as well as Moving Defendants' failure to show such damages are unrecoverable under the applicable law, the Court declines to strike Paragraphs 101 or 104–117. Further, Moving Defendants fail to demonstrate how they are unduly prejudiced by these allegations. The Court also declines to strike either Exhibit A or B, which purportedly support the allegations in the earlier-cited paragraphs, but notes that neither exhibit was considered in evaluating the instant motions to dismiss.

Lastly, Moving Defendants argue Plaintiff's request for punitive damages in Paragraph 168 should be stricken because the CFAA does not permit the recovery of such damages. The Court agrees. Unlike the SCA and the ECPA, which both expressly authorize the recovery of punitive damages, the CFAA lacks such language. *Compare* 18 U.S.C. § 2707(c) (permitting the recovery of punitive damages under the SCA), 18 U.S.C. § 2520(b) (same under ECPA) *with* 18 U.S.C. § 1030(g) (permitting recovery of compensatory damages, injunctive relief, and other equitable relief under the CFAA). Plaintiff's argument that *Van Buren* broadened the categories of damages available to claimants is unpersuasive. Plaintiff's request for punitive damages in Paragraph 168 is therefore stricken from her amended complaint.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss and to Strike Portions of Plaintiff's First Amended Complaint (Doc. #17) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in that Plaintiff's request for punitive damages is stricken from Paragraph 168 of the amended complaint. The motion is otherwise denied in all other respects.

**IT IS SO ORDERED.**

DATE: June 29, 2021

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT