IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| REBEKAH LEITNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-3075-SRB |
| | ) | |
| RICHARD MORSOVILLO, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant David Roark ("Roark") and Jennifer Griffin's ("Griffin") Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. #19.) For the reasons discussed below,[1] the motion is denied.

### I. BACKGROUND

This civil lawsuit arises from a complex web of business relationships between Plaintiff Rebekah Leitner ("Plaintiff") and Defendants.[2] Briefly, the Court sets forth the relevant facts as taken from Plaintiff's amended complaint.

Plaintiff, an Ohio citizen, started her own marketing business in 2012, focusing initially on print marketing but later expanding into digital marketing and advertising, as well as website hosting and management. Over time, Plaintiff developed her own client list and entered various contracts with her clientele. During 2014, Plaintiff partnered with a company known as Mission Marketplace LLC, which assisted her by providing various marketing services such as internet

---

[1] Contemporaneous with the instant motion, Defendants Richard Morsovillo ("Morsovillo"), Jeffrey Sneed ("Sneed"), JumpSix Marketing, LLC ("JumpSix"), and BigPxl, LLC ("BigPxl") filed a separate motion to dismiss. (Doc. #17.) While the two motions to dismiss presented some overlapping issues, for clarity the Court resolved the motions separately. Where appropriate, the Court herein references or incorporates discussions or reasoning from its other Order resolving the defendants' separate motion to dismiss. (Doc. #32.)

[2] As used throughout this Order, "Defendants" refers to all defendants named in Plaintiff's amended complaint.

advertising, web design, and web hosting services. Plaintiff became connected to Defendants Morsovillo and Sneed through Mission Marketplace, who both became involved with Mission Marketplace over the course of 2014–2015.

Between 2016–2017, Plaintiff hired Roark and Griffin, who are both citizens of Indiana, as independent contractor sales representatives for her business. In 2018, Morsovillo formed a Missouri LLC named JumpSix Marketing LLC ("JumpSix"). In 2019, Morsovillo and Sneed informed Plaintiff that JumpSix had taken over Mission Marketplace and asked Plaintiff to carry on her prior business dealings with this new entity. Over the course of the next year, Plaintiff's business relationship with Morsovillo, Sneed, and JumpSix began to deteriorate. Plaintiff alleges a JumpSix sales manager, Drew Owen ("Owen"), began to deliberately mislead and misinform Roark and Griffin regarding the financial stability of Plaintiff's business and her ability to keep them employed, which purportedly created friction between her, Roark, and Griffin.

In September 2019, Plaintiff, Roark, and Griffin attended a three-day training seminar in Springfield, Missouri, hosted by JumpSix. At that seminar, JumpSix announced its plan to post photos of Plaintiff, Roark, and Griffin onto its website, along with a plan to increase its pricing costs the following year. After attempts by Plaintiff over the following months to improve her deteriorating relationship with JumpSix, on November 8, 2019, Sneed told Plaintiff "that Roark and Griffin were terminating their relationship with [her] and that JumpSix was hiring Roark and Griffin[.]" (Doc. #13, ¶ 59.) A few days later, Plaintiff asked Sneed for "Roark's and Griffin's access to [her] clients, including [her] electronic files and data and her clients' files and data, to be cut off and eliminated" and stated that "Roark and Griffin [are] to have no access to her prospects and clients or their data and files moving forward." (Doc. #13, ¶ 61.) On November 25, 2019, Plaintiff notified Roark and Griffin in writing that all of the "sales related work they

conducted for her business and all confidential information that they obtained . . . must remain confidential and are [her] property." (Doc. #13, ¶ 64.)

Despite her directives to JumpSix, Roark, and Griffin that they were not permitted to use or access her confidential client data or information, Plaintiff alleges that "JumpSix, Sneed, and Morsovillo allowed Roark and Griffin to tamper with the data and files of [Plaintiff] and her clients and actively encouraged Roark and Griffin to do so[.]" (Doc. #13, ¶ 66.) In addition to their alleged file- and data-tampering efforts, Plaintiff claims Roark and Griffin "sent messages using their JumpSix and BigPxl email accounts hosted in Springfield, Missouri to some of [her] clients, threatening to terminate the hosting of their websites unless they signed new contracts with JumpSix and BigPxl and/or paid JumpSix and BigPxl for the amounts allegedly owed by [Plaintiff.]"[3] (Doc. #13, ¶ 83.) Ultimately, Plaintiff alleges that Defendants' actions interfered with and severely disrupted her business, causing significant monetary losses and reputational damage.

Plaintiff initiated suit pursuant to diversity jurisdiction and federal question jurisdiction, alleging Defendants' actions violate both state and federal law. Her amended complaint asserts the following claims against Defendants: (1) Count I: Tortious Interference with Contracts and/or Business Expectations; (2) Count II: Defamation; (3) Count III: Violation of the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; (4) Count IV: Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; (5) Count V: Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; (6) Count VI: Violation of the Missouri Computer Tampering Act ("Missouri CTA"), MO. REV. STAT.

---

[3] Plaintiff alleges JumpSix and BigPxl are both Missouri limited liability companies, of which Morsovillo and Sneed are the sole owners and members. (Doc. #13, ¶¶ 6–7, 13–14.) Plaintiff further alleges BigPxl is the "mere continuation or alter ego of JumpSix." (Doc. #13, ¶ 102.)

3

§ 569.095 *et seq.*; (7) Count VII: Conversion; (8) Count VIII: Civil Conspiracy; and (9) Count IX: Action for Accounting. Roark and Griffin seek dismissal of Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

## II. LEGAL STANDARD

### A. Rule 12(b)(2): Lack of Personal Jurisdiction

Before considering the merits of a claim, a court must first determine that it possesses personal jurisdiction over the defendants. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (noting "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit . . . and the parties"). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). To survive a motion to dismiss challenging personal jurisdiction, the plaintiff must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K-V Pharm. Co.*, 648 F.3d 588, 591–92 (8th Cir. 2011); *see Fastpath, Inc.*, 760 F.3d at 820 (to survive dismissal under Rule 12(b)(2), "a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant"). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm. Co.*, 648 F.3d at 592.

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v.*

*EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592–93 (8th Cir. 2011) (citation omitted). "Personal jurisdiction can be specific or general." *Id.* at 593. Specific, or case-linked, personal jurisdiction over a defendant exists when a plaintiff's claim arises from or relates to the defendant's purposeful contacts with the forum state. *Creative Calling Sols., Inc.*, 799 F.3d at 979–80 (citing *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)). In contrast, general personal jurisdiction over a defendant exists when that defendant's contacts with the forum State "are so continuous and systematic as to render [the defendant] essentially at home" in that state, regardless of how the plaintiff's claim arose. *Daimler*, 571 U.S. at 127, 136–39 (holding that an individual's domicile and a corporation's place of incorporation and principal place of business are "paradigm" bases for general personal jurisdiction). "Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

### B. Rule 12(b)(6): Failure to State a Claim

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When considering a motion to dismiss, "[t]he factual

allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotation marks omitted).

### III. DISCUSSION

Roark and Griffin argue Plaintiff's amended complaint should be dismissed in its entirety due to lack of personal jurisdiction. In the alternative, Roark and Griffin ask the Court to dismiss Plaintiff's federal claims, specifically Counts III, IV, and V, for failure to state a claim. Plaintiff opposes the motion, arguing the Court may properly exercise its specific jurisdiction over Roark and Griffin. Plaintiff additionally argues Rule 12(b)(6) dismissal is unwarranted given the nature of the allegations she puts forth in her amended complaint. Each argument is addressed below.

#### A. Specific Personal Jurisdiction

The parties agree neither Roark nor Griffin are subject to general personal jurisdiction in the state of Missouri. In turn, the Court focuses its analysis on specific personal jurisdiction. To subject a nonresident party to personal jurisdiction in Missouri, "personal jurisdiction must be proper under both the Missouri long-arm statute and the Due Process Clause." *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1215 (W.D. Mo. 2019). "The reach of a state's long-arm statute is a matter of state law, and federal courts are required to accept the interpretation given the statute by the state supreme court." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012) (citation and quotation marks omitted).

##### 1. Missouri's Long-Arm Statute

Under Missouri law, when considering whether specific personal jurisdiction exists over a nonresident defendant, the court must first determine if the defendant's conduct falls within a

category enumerated in Missouri's long-arm statute. *State ex rel PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. banc 2018). Missouri's long-arm statute provides, in relevant part:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
> (2) The making of any contract within this state;
> (3) The commission of a tortious act within the state[.]

MO. REV. STAT. § 506.500(1)–(3). Under controlling Missouri caselaw, "[t]hese categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction to the full extent permitted by the Due Process Clause." *Doohan v. CTB Invs., LLC*, 427 F. Supp. 3d 1034, 1044–45 (W.D. Mo. 2019) (citations omitted) (cleaned up). "Although each defendant's contacts with the forum State must be assessed individually, naturally the parties' relationships with each other may be significant in evaluating their ties to the forum." *Id.* at 1045 (citations omitted) (cleaned up).

Upon review of the record in this case, the Court finds Plaintiff sufficiently pleads facts to establish that this Court may properly exercise specific jurisdiction over Roark and Griffin, who are Indiana citizens. Plaintiff alleges both Roark and Griffin ceased working for her and began working for JumpSix and/or BigPxl in 2019, shortly after Roark and Griffin attended a three-day training seminar in Springfield, Missouri, where JumpSix and/or BigPxl are based. Plaintiff alleges the September 2019 seminar is when Roark and Griffin conspired with the other named defendants to "steal [her] clients" and proprietary client data for the use and benefit of JumpSix and/or BigPxl. (Doc. #13, ¶¶ 22, 26.) Plaintiff additionally alleges that during their subsequent employment with JumpSix, Roark and Griffin accessed Plaintiff's personal and client

7

data at the direction of JumpSix via computer systems that were allegedly maintained by JumpSix using an employer-issued email address. While both Roark and Griffin continued to work remotely as contractors for JumpSix and/or BigPxl from Indiana, they admit to "regularly communicat[ing] by email and telephone calls with [other] JumpSix and BigPxl employees physically located in Springfield, Missouri." (Doc. #20, p. 6.) These factual allegations give rise to each of Plaintiff's asserted claims and, taken together, readily satisfy Missouri's long-arm statute.

"Missouri courts construe 'transaction of business' broadly" and recognize that "a person or firm transacts business by visiting Missouri or sending its product or advertising here." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012) (citations omitted). Not only did both Roark and Griffin[4] visit Missouri for a work-related seminar hosted by a Missouri-based LLC, they also continued to regularly engage with JumpSix and/or BigPxl over the course of their subsequent employment. Missouri courts consistently find these sort of actions satisfy the state's long-arm statute. *See, e.g.*, *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 833 (E.D. Mo. 2018) (finding defendants who attended meetings in Missouri hosted by a Missouri-based business transacted business within the state under MO. REV. STAT. § 506.500); *Health Related Servs., Inc. v. Golden Plains Convalescent Ctr., Inc.*, 705 S.W.2d 499, 511–12 (Mo. App. W.D. 1985) (finding nonresident parties who attended and participated in meetings within Missouri that later culminated in the execution of a contract subject to specific jurisdiction).

Roark and Griffin contend their affidavits rebut Plaintiff's argument that both of them are subject to specific jurisdiction and that Plaintiff fails to satisfy her burden under Rule 12(b)(2).

---

[4] In her declaration submitted in support of the instant motion, Griffin admits she attended two training seminars in Missouri hosted by JumpSix. The first occurred in August 2018, and the second occurred in September 2019. (Doc. #20-2, p. 2.)

The Court disagrees, and finds the submitted affidavits do not rebut Plaintiff's assertion that both Roark and Griffin transacted business in the state of Missouri, nor that their employment with JumpSix arose, in part, from the various interactions or negotiations which took place during the September 2019 seminar in Missouri. *See Doohan*, 427 F. Supp. 3d at 1046. To the extent that Roark and Griffin argue their affidavits refute Plaintiff's characterization regarding the extent of their communications with JumpSix and/or BigPxl, the Court resolves such disputes in Plaintiff's favor. *See K-V Pharm. Co.*, 648 F.3d at 592. In sum, Plaintiff makes a *prima facie* showing that Roark and Griffin's conduct falls within Missouri's long-arm statute.[5]

### 2. Due Process Clause

Having found that Missouri's long-arm statute permits the exercise of jurisdiction over both Roark and Griffin, the Court considers whether the assertion of personal jurisdiction would violate Due Process. *See Truman Rd. Dev.,* 414 F. Supp. 3d at 1217. Due process requires that a plaintiff show the defendant has "sufficient minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). "The conduct and connection with the forum state must be such that the defendant could reasonably anticipate being haled into court there." *Id.* (citations omitted).

For specific jurisdiction, personal jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citation omitted). In determining whether a nonresident defendant's contacts with Missouri are sufficient to subject it

---

[5] Given the Court's finding of specific jurisdiction under MO. REV. STAT. § 506.500(1), the Court need not discuss whether Plaintiff sufficiently pleads facts showing Roark and Griffin are also subject to personal jurisdiction under the remaining prongs of the long-arm statute.

to personal jurisdiction, the Court considers five factors, "the first three of which are the most important: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Truman Rd. Dev.*, 414 F. Supp. 3d at 1216 (quoting *Arden*, 614 F.3d at 794).

Applied here, the factors weigh in favor of establishing Roark and Griffin's minimum contacts with Missouri. Regarding the nature, quality, and quantity of both Roark and Griffin's various contacts with Missouri, Roark and Griffin visited Missouri for an extended training seminar hosted by JumpSix, who became Roark and Griffin's employer shortly after their visit to Missouri. Roark and Griffin also stayed in regular contact with JumpSix and/or BigPxl after that September 2019 seminar, including exchanging emails and telephone calls with the companies' Missouri-based employees. Roark and Griffin's 2019 visit, along with their repeated post-visit communications and actions, form the factual basis for Plaintiff's tort-based claims. Further, Plaintiff alleges that during the September 2019 seminar, Defendants discussed and hatched the alleged conspiracy to interfere with Plaintiff's business relationships and utilize her proprietary client information to shift her business portfolio to JumpSix and/or BigPxl. *See Truman Rd. Dev.*, 414 F. Supp. 3d at 1216 (noting that while "each defendant's contacts with the forum State must be assessed individually, naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum.") (citations omitted). Taken together, Roark and Griffin's contacts with Missouri are deliberate, ongoing, and significant, rather than "random, fortuitous, or attenuated." *Whaley*, 946 F.3d at 452.

Roark and Griffin contend that phone calls and emails alone are not sufficient to satisfy the minimum contacts requirement of Due Process. However, this argument fails to appreciate

10

or acknowledge either the duration or significance of Roark and Griffin's seminar attendance in Missouri in September 2019, or the relationship between that visit and Plaintiff's asserted claims. Moreover, Plaintiff alleges that the unauthorized access of her client information underlying her Counts III, IV, V, and VI claims occurred via databases and/or computer systems "housed in and accessed from Missouri" using email addresses JumpSix and/or BigPxl had issued to Roark and Griffin. (Doc. #22, p. 9.)

In sum, Plaintiff puts forth a sufficient factual basis regarding the nature, quality, and quantity of Roark and Griffin's contacts with Missouri, and the relation of those contacts to her claims, to demonstrate that Roark and Griffin "purposely availed" themselves "to the benefits and protections" of Missouri. *See Viasystems, Inc.*, 646 F.3d at 594 (citations omitted). The last two jurisdictional factors, which carry less weight in the Court's personal jurisdictional analysis and are not dispositive, *see Whaley*, 946 F.3d at 452, also do not weigh against finding personal jurisdiction over Roark or Griffin. In turn, the Court finds personal jurisdiction over Roark and Griffin for Plaintiff's asserted state and federal claims is proper.

**B. Failure to State a Claim**

Roark and Griffin additionally seek dismissal of Plaintiff's federal claims (Counts III, IV, and V) pursuant to Rule 12(b)(6). In the other motion to dismiss, filed contemporaneously with the instant motion by the remaining defendants (Doc. #17), Defendants raise identical arguments regarding why Plaintiff fails to state a claim under either the SCA (Count III), CFAA (Count IV), or the ECPA (Count V). The Court thus finds it unnecessary to repeat the legal basis for Counts III, IV, and V or summarize the arguments made by each side. Furthermore, the Court's prior Order resolving that motion to dismiss discussed in great detail why Plaintiff's claims were not subject to dismissal under Rule 12(b)(6). (Doc. #32.) The Court declines to repeat itself here,

and instead incorporates its prior relevant discussions in resolving the instant motion. In turn, finding no distinguishable facts or legal arguments that warrant dismissal of Plaintiff's claims, Roark and Griffin's motion to dismiss pursuant to Rule 12(b)(6) is denied for the reasons articulated by this Court in its prior order (Doc. #32).

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants Roark and Griffin's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #19) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: June 29, 2021