IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

REBEKAH LEITNER,            )
                            )
        Plaintiff,          )
                            )
    v.                      )   Case No. 21-CV-3075-SRB
                            )
RICHARD MORSOVILLO, et al., )
                            )
        Defendants.         )

## ORDER

Before the Court is Defendants Richard Morsovillo, Jeffrey Sneed, David Roark, Jennifer Griffin, JumpSix Marketing, LLC, BigPxl, LLC, and E&M Management, LLC's (collectively, "Defendants") Motion for Summary Judgment. (Doc. #83.) For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

This civil lawsuit arises from a complex web of business relationships between Plaintiff Rebekah Leitner ("Plaintiff") and Defendants. Plaintiff, an Ohio citizen, started her own marketing business in 2012. During 2014, Plaintiff partnered with a company known as Mission Marketplace LLC, through which she became connected to Defendants Richard Morsovillo ("Morsovillo") and Jeffrey Sneed ("Sneed"), who are both citizens of Missouri. Between 2016–

---

[1] The facts discussed below are taken from the parties' briefs and exhibits, without further quotation or attribution unless otherwise noted.

2017, Plaintiff hired David Roark ("Roark") and Jennifer Griffin ("Griffin"), who are both citizens of Indiana, as independent contractor sales representatives for her business.

Plaintiff later began utilizing JumpSix, an LLC formed by Morsovillo in 2018 to perform various marketing services for her clientele. While working with JumpSix, Plaintiff utilized the following internet services: an email account, a Google Drive, Basecamp, and HubSpot (collectively, "the platforms"). The parties do not dispute that Plaintiff did not hold licenses to these services and used them at the invitation of Jumpsix.[2] Jumpsix, Sneed, and Morsovillo controlled the licenses or subscriptions to the platforms. By virtue of holding the license and/or subscription, Jumpsix, Sneed, and Morsovillo had the ability to access the data that Plaintiff stored on the platforms, and share that access with others.

In late 2019, Plaintiff terminated her business relationship with Defendants. Plaintiff ended her independent contractor relationship with Roark on November 8, 2019. Plaintiff instructed and JumpSix agreed to block Griffin and Roark's access to platforms listed above on November 13, 2019. Plaintiff ended her independent contractor relationship with Griffin at some point between November 2019–January 2020. (Doc. #87-8, p. 5.)[3] Defendants continued to access Plaintiff's client information on the platforms after the termination of the parties' relationships. Additionally, Griffin and Roark continued to use the email addresses assigned to them as part of their business relationship with Plaintiff, which contained Plaintiff's client information.

Plaintiff filed suit, asserting the following claims against Defendants: (1) Count I: Tortious Interference with Contracts and/or Business Expectations; (2) Count II: Defamation;

---

[2] The parties dispute whether JumpSix or E&M Management, the alleged owner of JumpSix, owned the licenses to these platforms. For the purposes of this motion, the Court finds that determining which entity owned the licenses is irrelevant.
[3] All page numbers refer to the pagination automatically generated by CM/ECF.

(3) Count III: Violation of the Stored Wire and Electronic Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; (4) Count IV: Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; (5) Count V: Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; (6) Count VI: Violation of the Missouri Computer Tampering Act ("Missouri CTA"), Mo. Rev. Stat. § 569.095 *et seq.*; (7) Count VII: Conversion; (8) Count VIII: Civil Conspiracy; (9) Count IX: Action for Accounting; and (10) Count X: Breach of Duty of Loyalty.

## II.   LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III.  DISCUSSION

Defendants move for summary judgment on Counts III–V and IX–X. Plaintiff opposes the motion. The parties' arguments are addressed below.

    **A.**     **Count III: Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701**

Defendants argue that summary judgment should be granted on Count III because (1) a plaintiff cannot prevail on a SCA claim where "the facts confirm that the only systems at issue are Defendants' own[;]" and (2) two statutory exceptions bar liability.[4] (Doc. #84, p. 9) (emphasis in original). Each argument is addressed below.

Commonly known as the Stored Communications Act, the SCA authorizes a civil cause of action against anyone who:

> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>
> (2) intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage.

18 U.S.C. § 2701(a)); 18 U.S.C. § 2707 (creating a civil cause of action). As defined by the SCA, "electronic storage" means: "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof;" or "(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

### 1. Unauthorized Access

Defendants argue that summary judgment is warranted on Count III because "[t]he undisputed material facts do not in any way suggest that there was–or possibl[y] could have been–any intrusion into any electronic communication system at all" because Defendants owned the relevant systems and Plaintiff had no right to control them. (Doc. #84, p. 10.) Plaintiff disagrees, arguing that the data at issue was hosted on third-party servers and "everyone admits

---

[4] Defendants also incorporate by reference all arguments put forth in the briefings on their previous motion to dismiss. (Doc. #18; Doc. #30.) However, the Court declines to consider these arguments. *See DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("[I]ncorporation is a pointless imposition on the court's time. A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.").

they accessed [Plaintiff]'s electronic business data in violation of her express instruction."
(Doc. #87, p. 16.)

A person violates the SCA when they access an email account, "exceeding the expressly limited authorization" given. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839 (8th Cir. 2015) (applying principles of common law trespass to guide the scope of access under SCA). Ability to access does not confer authority to access for the purposes of the SCA. *Id.* (citing *Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 740 (8th Cir. 2005)).

As the key inquiry is whether Defendants had authorization to access Plaintiff's data on the platforms, the Court finds that summary judgment is warranted as to the Basecamp and Hubspot platforms. However, there are genuine disputes of material fact exist as whether Defendants had authorization to access the email accounts and Google Drive, as set out below. It is undisputed that Defendants provided the license or subscription for the platforms:

> Q   So when you are using JumpSix Marketing and communicating with JumpSix Marketing about digital marketing services customers, you are using Google Drive, Basecamp, and HubSpot at the invitation of JumpSix Corporate. Correct?
>
> A   As a part of doing business – yeah, as part of doing business, those were softwares provided to me as part of – they were supplied through JumpSix for my business.

(Doc. #84-1, p. 8–9.) Further, it is undisputed that Defendants, by virtue of holding the license and/or subscription, had the ability to access the information and communications stored in Plaintiff's accounts. (Doc. #84-1, pp. 17–18.)

Plaintiff has presented evidence establishing a genuine question of material fact as to whether Defendants had the *authorization* to access data or communications stored on the email or Google Drive. In discussing employment arrangements after ending her association with

5

JumpSix, Defendant Sneed told Plaintiff that "technically, [Plaintiff] own[ed] those email addresses" and that he "fe[lt] [Plaintiff] ha[d] rights to everything in [the] drive." (Doc. #87-3, pp. 1–2; Doc. #87-7, p. 1.) Further, the parties agree that Plaintiff instructed Defendants to cut Defendants' access to the platforms. Beyond general allegations that "the only systems at issue (email, Google Drive, Basecamp, Hubspot, and web hosting) are all Defendants' own systems," Defendants put forth no evidence that they had unrestricted authorization to all data and communications hosted on those platforms. (Doc. #84, p. 9); *see Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1177 (11th Cir. 2017) (evaluating whether access to an email account was authorized by referring to the company's computer and internet policies). Therefore, Defendants have not satisfied their burden in showing there is no genuine dispute of material fact as to whether their access was authorized.

However, Court finds that summary judgment is warranted on Count III as to the Basecamp and HubSpot platforms. Plaintiff admits that all data and communications stored on these platforms were accessible to and used by other JumpSix employees: "So with HubSpot, if you were set up as a user, you could view all the information. As a user in Basecamp, that information is shared about clients so other people can do the designated tasks that they are supposed to do." (Doc. #87-1, p. 22.) Plaintiff does not allege that Defendants improperly accessed her account to gain access to the information stored on these platforms. *See Ehling v. MonMouth-Ocean Hosp. Serv. Corp.*, 961 F.Supp.2d 659, 670 (D.N.J. 2013) (finding that coworkers viewing a public Facebook page did not constitute unauthorized access). Therefore, the Court finds that summary judgment is warranted on Count III as to the Basecamp and HubSpot platforms only.

6

### 2. Statutory Exceptions

Defendants argue that summary judgment is warranted on Count III because the SCA prohibits a service's providers and users from being liable under the statute. Plaintiff disagrees, arguing the two cited exceptions are inapplicable.

The SCA provides that conduct that violates the SCA is excepted from liability if it is "authorized . . . (1) by the person or entity providing a wire or electronic communications service; [or] (2) by a user of that service with respect to a communication of or intended for that user[.]" 18 U.S.C. § 2701(c). A "user" is someone who "uses an electronic communication service" and "is duly authorized by the provider of such service to engage in such use[.]" 18 U.S.C. § 2510(13). Each exception will be discussed separately below.

#### a) Provider

First, Defendants argue that they are the providers of the platforms at issue within the meaning of § 2701(c)(1) such that they cannot be held liable under the SCA. Plaintiff disagrees, arguing that "the service providers are Google and the other third-party companies which own the Basecamp and HubSpot web-based subscription platforms." (Doc. #87, p. 18.)

The Court rejects Defendants' argument. Defendant is a provider of marketing services and has not shown evidence that they operate a "service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15); *see In re Jetblue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 307 (E.D.N.Y. 2005) ("Thus, a company such as Jetblue does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its consumers."). Many courts have held that "companies that provide traditional products and services over the Internet, as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of" the SCA. *Id.*;

7

see, e.g., *Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001); *see also Andersen Consulting LLP v. UOP*, 991 F.Supp. 1041, 1043 (N.D. Ill. 1998).  As Defendants have failed to provide evidence they operate a service providing users with access to the internet, Defendants' argument is rejected.

### b) User

Second, Defendants Roark and Griffin argue that they are users within the meaning of § 2701(c)(2) because "their supposed violation of the SCA consisted of continuing to use the same email address they had previously used."  (Doc. #84, p. 11.)  Plaintiffs argue that this exception does not apply because Plaintiff has "expressly revoked her prior authorization" to use the email accounts.  (Doc. #87, p. 19.)

As discussed above, the parties agree that Plaintiff instructed Defendants to revoke access to the emails, and Plaintiff has presented evidence that she had the authority to revoke such access.  *See* (Doc. #87-3, pp. 1–2.)  After Plaintiff revoked such access on November 13, 2019, Defendants arguably are not considered "users" because they were not duly authorized to access their emails.  The Court agrees with Plaintiff and finds there is a genuine dispute of material fact as to whether Defendants Roark and Griffin were authorized to use their email accounts such that they qualify as a "user" under § 2701(c)(2).  *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 839 (8th Cir. 2015).

In sum, the Court finds that summary judgment is warranted on Count III to the extent that Plaintiff seeks liability for access to the Basecamp and Hubspot platforms, and denied in all other respects.

### B. Count IV: Computer Fraud and Abuse Act, 18 U.S.C. § 1030

Defendants argue that summary judgment is warranted on Count IV because Defendants did not exceed their authorization in accessing the platforms at issue within the meaning of the

8

CFAA. Plaintiff disagrees, arguing "this Court has already considered and rejected Defendants' effort to characterize Rebekah's allegations as limited solely to a 'purpose-based theory' rejected by *Van Buren v. United States*, 141 S. Ct. 1648 (2021)[.]" (Doc. #87, p. 20.)[5]

"[T]he CFAA is a criminal statute that was intended to create a cause of action against computer hackers." *Foley Indus., Inc. v. Nelson*, No. 4:21-00309-CV-RK, 2021 WL 5614775, at *4 (W.D. Mo. Nov. 30, 2021) (citing *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*, 600 F.Supp.2d 1045, 1049 (E.D. Mo. 2009)). However, the CFAA authorizes a civil cause of action against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer[,]" causing "damage or loss[.]"[6] 18 U.S.C. § 1030(a)(1); (g). The CFAA defines "exceeds authorized access" as "access[ing] a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter[.]" 18 U.S.C. § 1030(e)(6).

In *Van Buren*, the Supreme Court clarified that "an individual 'exceeds authorized access' when he accesses a computer with authorization then obtains information located in particular areas of the computer–such as filed, folders, or databases–that are off limits to him." *Van Buren*, 141 S. Ct. at 1662; *see Foley*, 2021 WL 5614775, at *4 ("Plaintiff alleges only that Defendant accessed the emails and information with authorization, but for an improper purpose, which is the exact situation *Van Buren* made clear is not a CFAA violation."); *see also*

---

[5] In denying Defendants' earlier motion to dismiss, the Court found that Count IV required "a fact-intensive inquiry" and evaluation was "ill-suited for resolution on a Rule 12(b)(6) motion." (Doc. #32, p. 7.)

[6] While some appellate circuits have found that the CFAA authorizes a civil action for a violation of any of the subsections of § 1030(a), the Court notes the Eighth Circuit itself has not decided the issue and some district courts have limited recovery to certain subsections. *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1045 (D. Minn. 2010) (collecting cases) (limiting CFAA claims to certain subsections of § 1030(a)).

*Pinebrook Holdings, LLC v. Narup*, No. 4:19-CV-1562-MTS, 2022 WL 1773057, at *12 (E.D. Mo. June 1, 2022) ("An individual, however, who has 'improper motives' for obtaining information that is otherwise available to him does not commit an offense under CFAA.") (citing *Van Buren*, 141 S. Ct. at 1660).

The Court finds that Plaintiff does not provide any evidence that Defendants accessed areas of a computer that were off-limits to them. Plaintiff alleges that Defendants improperly used information accessed on the relevant platforms. *Van Buren* explicitly stated that the CFAA "does not cover those who . . . have improper motives for obtaining information that is otherwise available to them." 141 S. Ct. at 1652. Further, *Van Buren* defined "exceed[ing] authorized access" as "the act of entering a part of the system to which a computer user lacks privileges." *Id.* at 1658. Plaintiff does not show that Defendants lacked the user privileges to enter the relevant platforms. There is no dispute that Defendants retained privileges to access the platforms. Instead, she alleges that they were not entitled to use information contained on those platforms. Here, Defendants' alleged misuse of information is not a violation of the CFAA. Therefore, Defendants are entitled to summary judgment on Count IV.

### C. Count V: Electronic Communications Privacy Act, 18 U.S.C. § 2510

Defendants argue that summary judgment is warranted on Count V because the ECPA requires an interception of communications, and "[a]ccessing data that is stored on one's own platforms and systems is a far cry from contemporaneously 'intercepting' data in violation of the ECPA." (Doc. #84, p. 15.) Plaintiff disagrees, arguing that, even if the Court finds any interception must be contemporaneous with its transmission, this case involves the continuous transmission of information to the relevant platforms.

A person violates the ECPA, also referred to as the Wiretap Act, who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to

10

Case 6:21-cv-03075-SRB    Document 91    Filed 10/12/22    Page 10 of 15

intercept, any . . . electronic communication[.]" 18 U.S.C. § 2511(1)(a). "Intercept" means "the aural or other acquisition of contents of any . . . electronic . . . communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(5)(a).

"The Eighth Circuit has not decided this particular issue, but most courts have determined interception must occur during transmission." *Porters Building Centers, Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *8 (W.D. Mo. Oct. 2, 2017) (collecting cases); *Boudreau v. Lussier*, 901 F.3d 65, 78 (1st Cir. 2018); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3rd Cir. 2003); *Steve Jackson Games, Inc. v. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994); *Luis v. Zang*, 833 F.3d 619, 630–31 (6th Cir. 2016); *Epstein v. Epstein*, 843 F.3d 1147, 1149 (7th Cir. 2016); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002); *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003). "[The] Wiretap Act covers only contemporaneous interceptions–understood as the act of acquiring an electronic communication in transit–rather than the acquisition of stored electronic communications, which is addressed by the Stored Communications Act." *Epstein*, 843 F.3d at 1149.

Plaintiff argues the Court should adopt a broader view of the ECPA, as adopted by the Second Circuit in *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 n.1 (2nd Cir. 2005). In *Hall*, the Second Circuit rejected the argument that "an 'interception' can only occur when messages are in transit" because *Hall* "involve[d] the *continued receipt* of e-mail messages rather than the acquisition of *previously stored* electronic communication." 396 F.3d at 503 n.1 (emphasis in original). Plaintiff argues that her claims meet the contemporaneous requirement as interpreted by *Hall* because "[n]ecessarily, every email that arrived in the inboxes of [the email accounts]–and every bit of data created on the Google Drive, Basecamp, and Hubspot platforms– was contemporaneously intercepted by Defendants."

11

However, the approach in *Hall* is inconsistent with the majority view, under which "very few seizures of electronic communications from computers will constitute 'interceptions'" because "'[t]here is a very narrow window during which an E-mail interception may occur–the seconds or milli-seconds before which a newly composed message'" is stored. *Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (quoting Jarrod J. White, *E-Mail @Work.com: Employer Monitoring of Employee E-Mail*, 48 ALA. L. REV. 1079, 1083 (1997)). Further, the majority interpretation of the ECPA "is consistent with the structure of the ECPA, which created the SCA for the express purpose of addressing 'access to *stored* . . . electronic communications and transaction records.'" *Konop*, 302 F.3d at 878–79 (quoting S.Rep. No. 99-541 at 3) (emphasis in original).

The Court agrees with the majority of circuit courts in that an interception must be contemporaneous with a transmission of a communication, and finds that Defendants' alleged conduct is not the type prohibited by the ECPA. This case involves Defendants' alleged unlawful access of information *stored* on the platforms at issue. Upon review of the record, there is no evidence that Defendants accessed information at the time of its transmission on either the relevant email accounts, Google Drive, Basecamp, or Hubspot platforms. To the extent there is evidence that Defendants accessed information stored information, it is more appropriately addressed through Plaintiff's SCA claim, discussed above. The Court finds no genuine dispute of material fact as to whether Defendants violated the ECPA. Accordingly, Defendants' motion for summary judgment on Count V is granted.

### D. Count IX: Action for Accounting

Defendants argue that summary judgment is warranted on Count IX because Plaintiff "has not pleaded or proven there was a fiduciary relationship between the parties" as required for

a right to equitable accounting to arise. (Doc. #84, p. 15.)[7] Plaintiff disagrees, arguing that a fiduciary relationship between herself and Defendants Roark and Griffin was implied by "a series of oral agreements and understandings over a period of years." (Doc. #87, p. 23.)

"To establish a right to an equitable accounting," a plaintiff must show (1) "a need for discovery;" (2) that "the nature of the accounts [are] complicated;" (2) "that a fiduciary duty existed between the parties;" and (4) "the lack of any adequate remedy at law." *Cook v. Martin*, 71 S.W.3d 677, 679 (Mo. Ct. App. 2002) (citing *Ballesteros v. Johnson*, 812 S.W.2d 217, 220 (Mo. Ct. App. 1991)). "A fiduciary relationship exists where there is a special confidence reposed on one side and resulting domination and influence on the other." *Bossaler v. Red Arrow Corp.*, 897 S.W.2d 629, 631 (Mo. Ct. App. 1995) (citation omitted). "The question is whether or not trust is reposed with respect to property or business affairs of the other." *Id.* (citation omitted).

Here, the Court finds that summary judgment is warranted because there is no genuine dispute of material fact as to whether Plaintiff had a fiduciary relationship with Defendants. The parties agree that Roark and Griffin were independent contractors, and not Plaintiff's employees. Although Plaintiff argues that she had a fiduciary relationship with Roark and Griffin, Plaintiff has not presented evidence that they had "relation[s] implying and necessitating great confidence on the one part and a high degree of good faith on the other part." *Zelch v. Ahlemeyer*, 592 S.W.2d 483, 485 (Mo. App. E.D. 1979). Roark and Griffin had access to information regarding Plaintiff's business and customers, but Plaintiff has not presented evidence showing that the

---

[7] The parties dispute whether Missouri or Ohio law applies to Plaintiff's tort claims. A "federal court in Missouri [is] bound to apply the forum's choice of law principles." *Brown v. Home Ins. Co.*, 167 F.3d 1102, 1105 (8th Cir. 1999) (citation omitted). "Under Missouri law there is not an actual conflict of law unless the interests of two or more states cannot be reconciled." *Id.* (citation omitted). Here, the Court finds that the outcome under Ohio law would be the same such that no conflict of law exists.

13

relationship arose beyond that of an ordinary independent contractor. Accordingly, Defendants' motion for summary judgment on Count IX is granted.

### E. Count X: Breach of Duty of Loyalty

Defendants argue that summary judgment is warranted on Count X because Plaintiff's "mere allegations of breach of some otherwise undefined duty are insufficient as a matter of law to prove that Roark and Griffin owed a duty of loyalty to her under the circumstances of this case." (Doc. #84, p. 16.) Plaintiff disagrees, arguing a genuine dispute of material fact precludes summary judgment.

An independent contractor who is "not subject to a non-compete agreement" does not owe a duty of loyalty because their former employer "cannot limit or restrict [them] . . . from completing against them upon the dissolution of [the] independent contractor relationship." *SEMO Env't Servs., LLC v. SEMO Env't, LLC*, No 1:11CV226 HEA, 2013 WL 823292, *3 (E.D. Mo. Mar. 6, 2013). "[I]t is a basic principle of the law of agency that an agent 'has a fiduciary duty to act loyally for the principal's benefit in all matters connected with that agency relationship.'" *Emerson Elec. Co. v. Marsh & McLennnan Cos.*, 362 S.W.3d 7, 13 (Mo. banc 2012) (citations omitted). However, to establish an agency relationship, a plaintiff must show: (1) the principal has "the right to control the conduct of the agent with respect to matter entrusted to the agent;" (2) the agent is "a fiduciary of the principal;" and (3) the agent is "able to alter legal relationships between the principal and a third party." *State ex rel. McDonald's Corp. v. Midkiff*, 226 S.W.3d 119, 123 (Mo. banc 2007) (citation omitted).

As to Roark, the Court finds that there is no genuine dispute of material fact and summary judgment is warranted on Count X. Roark worked with Plaintiff as an independent contractor until November 8, 2019. (Doc. #87, p. 9.) Plaintiff directed Defendants' access to the platforms at issue be severed on November 13, 2019, which is after the independent contractor

14

relationship was terminated. Because Roark was not subject to a non-compete clause, he owed no duty of loyalty to Plaintiff after the termination of their working relationship. *Id.* Plaintiff presents no genuine dispute of material fact as to whether Roark breached a duty of loyalty.

Further, the Court finds there is no genuine dispute of material fact as to whether Griffin and Roark owed a duty of loyalty to Plaintiff. As discussed above, Plaintiff fails to put forth evidence that Plaintiff had a fiduciary relationship with Griffin and Roark. Plaintiff argues that questions of material fact exist because "Mr. Roark and Ms. Griffin do not even know then they stopped working for" Plaintiff, "so they cannot say when their duty of loyalty to [Plaintiff] ended." (Doc. #87, p. 25.) However, this argument cuts against the existence of a fiduciary relationship as it does not indicate dominance or trust existed between Plaintiff and Roark and Griffin. *See Bossaler*, 897 S.W.2d at 631 (finding a fiduciary relationship exists when "there is a special confidence reposed on one side and resulting domination and influence on the other," and looking to "whether or not trust is reposed"). As Plaintiff has not presented evidence creating a genuine issue of material facts as to whether a fiduciary relationship existed giving rise to the duty of loyalty, the Court finds that summary judgment is warranted on Count X.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. #83) is **GRANTED IN PART**, and **DENIED IN PART**. Defendants' motion is granted as to Count III, as to liability for the Basecamp and Hubspot platforms only; Count IV; Count V; Count IX; and Count X. Defendants' motion is denied insofar as Count III remains as to the email and Google Drive accounts.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
DATE: October 12, 2022              UNITED STATES DISTRICT COURT